UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL CHEBOWSKI,

        Plaintiff,                    CASE NO. 15-13092
                                            HON. DENISE PAGE HOOD

v.

KELSEY-HAYES SALARIED PENSION
PLAN,
TRW AUTOMOTIVE US, LLC,
TRW AUTOMOTIVE
ADMINISTRATIVE COMMITTEE,

        Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS [#18] AND SETTING
STATUS/SCHEDULING CONFERENCE**

This matter is before the Court on a Motion for Partial Judgment on the Pleadings filed on December 21, 2015 by Defendants Kelsey-Hayes Salaried Pension Plan; TRW Automotive US, LLC; and TRW Automotive Administrative Committee. This case concerns an eligibility determination under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. The issue before the Court is whether Plaintiff Daniel Chebowski's claims of equitable estoppel (contained in Count II and Count IV) and failure to maintain pension plan records (contained in Count II) are properly pleaded so as to state valid claims. For the reasons stated below, the Court concludes that the claims fail as a matter of

1

law.  Defendants' Motion is granted as to Count II and the equitable-estoppel portion only of Count IV.

## I. BACKGROUND/FACTS

Plaintiff Daniel Chebowski ("Chebowski") began working for Kelsey-Hayes on October 4, 1989.  (Doc # 1, Pg ID 3)  He worked for Kelsey-Hayes for a total of 4.7 years, until May 13, 1994.  *Id.*  Chebowski participated in the K-H Corporation Retirement Plan for Salaried Employees (the "Plan") while he was employed by Kelsey-Hayes, during which time Kelsey-Hayes Company was the Plan Administrator.  (Doc # 1, Pg ID 3)  The Plan is a defined benefit pension plan, as defined by ERISA.  (Doc #1, Pg ID 2; Doc # 19, Pg ID 392-440)

Under the terms of the Plan, a participant must have completed 5 years of service to be eligible for a vested pension benefit.  (Doc # 19, Pg ID 425)  Under a section entitled "Eligibility," the Plan specifically states:  "Each Participant . . . whose employment with the Company is terminated after he has completed at least . . . five (5) years of Eligibility Service after December 31, 1988) shall be entitled to receive . . . a deferred vested retirement benefit."  *Id.*

Effective December 31, 1994, several months after Chebowski's termination of employment with Kelsey-Hayes, the Plan was amended to cease "all future benefit accruals of credited service" — in effect freezing the amount of benefits an employee was entitled to receive so that the amount of benefits would not continue

to increase based on additional time of service after December 31, 1994. (Doc # 19, Pg ID 448) The Amendment did not alter who was entitled to vested benefits, and did not permit the plan sponsor to stop making contributions to the Plan to pay the benefits for those employees who were vested. Under the Amendment, the Plan was still required to take into account an existing employee's service after December 31,1994 for purposes of determining that employee was entitled to vested benefits under the 5-year eligibility criterion. (*See* Doc # 19, Pg ID 386-89)

Following Chebowski's termination, the Plan was merged several times, most recently into the TRW Automotive Salaried Pension Plan. (Doc # 1, Pg ID 4; Doc # 19, Pg ID 449) The administrators of the Plan also changed several times, and Defendant TRW Automotive U.S. LLC is the current Plan Administrator. *Id.* TRW Automotive U.S. LLC has delegated some of its administrative duties to Defendant TRW Automotive Administrative Committee ("TRW"), which is currently responsible for the Plan's day-to-day administrative matters. *Id.*

According to Chebowski, following his termination of employment, he received information from Kelsey-Hayes Company, the Plan Administrator at the time, that his pension benefits were fully vested. (Doc # 1, Pg ID 5) Chebowski understood that his pension benefits had become fully vested after only 4.7 years of Eligibility Service as a result of the Plan being merged (Doc # 1, Pg ID 5, 15), or as a result of the December 1994 Amendment to the Plan (Doc #21, Pg ID 460).

Chebowski learned the reasons for his pension benefits becoming fully vested "through low level conversations." *Id.* at 474.

Over the course of the next twenty years following his termination, Chebowski received periodic benefit statements through a website operated by a third-party, Fidelity Investments, stating that his "estimated" monthly retirement benefit was $183.86, based on records indicating that he "separated from employment on December 31, 1990," an incorrect date of termination. The benefit statements on the website also stated that Chebowski's current vested percentage was 100 percent, based on 1.25 years of service with Kelsey-Hayes, an incorrect number of years of service. (Doc # 19, Pg ID 161; Doc # 1, Pg ID 5, 6, 16)

In a letter to Chebowski, dated October 7, 2014, TRW states: "Your age 65 accrued benefit (AB) was provided to us without calculation details at the time we became the record keeper. If you believe the AB is incorrect, please provide documentation, and we will be glad to research further." (Doc # 19, Pg ID 204)

In a letter dated March 12, 2015, Chebowski asserted that the amount of his benefit and number of years of service should be greater because he had actually worked for over 4 years, not 1.25 years, as stated on his benefit statements. (Doc # 1, Pg ID 6, 17; Doc # 19, Pg ID 167) TRW responded in a letter, dated March 19, 2015, agreeing that Chebowski had been employed by Kelsey-Hayes from October 4, 1989 to May 13, 1994, for a total of 4.7 years. (Doc # 1, Pg ID 8, 17; Doc # 19,

Pg ID 153-54) The letter further stated that the 4.7 years of service were insufficient to receive a pension benefit under the Plan; that the date of hire and date of termination, along with the estimated benefit amount of $183.86 listed in the Fidelity Investments system were incorrect; and that the accrued benefit amount would be corrected to $0. (Doc # 1, Pg ID 8, 17; Doc # 19, Pg ID 153-54)

In a letter dated April 6, 2015, Chebowski objected to the TRW's correction of the benefit amount to $0 and requested records from the TRW, including records showing how the previous $183.86 monthly benefit had been calculated. (Doc # 1, Pg ID 9; Doc # 19, Pg ID 157-59) In a letter dated April 10, 2015, the TRW informed Chebowski that his appeal would be reviewed within 90 days. (Doc # 1, Pg ID 11; Doc # 19, Pg ID 155) The TRW affirmed its decision on June 2, 2015 (Doc # 1, Pg ID 11-12, 18; Doc # 19, Pg ID 151), and this lawsuit followed.

On August 31, 2015, Chebowski filed a Complaint against Defendants Kelsey-Hayes Salaried Pension Plan; TRW Automotive US, LLC; and TRW Automotive Administrative Committee alleging four counts: Failure to produce documents under ERISA, section 104(b)(4) and records under section 209(a)(1) (Count I); Failure to administer the plan and maintain records as required by ERISA, section 209(a)(1), and an equitable estoppel claim (Count II); Failure to provide a full and fair review of the decision to deny a benefit under ERISA, section 503 (Count III); and, again, an equitable estoppel claim as well as a claim

5

that the Plan Administrator's determination was arbitrary and capricious (Count IV). On October 23, 2015, Defendants filed an Answer. On December 21, 2015, Defendants filed a Motion for Partial Judgment on the Pleadings as to Count II and the equitable estoppel portion of Count IV only. A response and reply were filed, and a hearing was held on April 27, 2016.

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 12(c) authorizes parties to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Motions for judgement on the pleadings are analyzed under the same de novo standard as motions to dismiss under Rule 12(b)(6). *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010) (internal citation and quotation marks omitted). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.*

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must

be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555.  A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555).  "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 550 U.S. at 562).

When deciding a 12(c) motion for judgment on the pleadings, as a general rule, matters outside the pleadings may not be considered unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56.  *See Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).  The Court may, however, consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Id.* at 89.

**B. Chebowski's Claims of Equitable Estoppel (portion of Count II and portion of Count IV)**

Defendants specifically seek dismissal of Chebowski's estoppel-based claims that comprise part of Count II and part of Count IV. Accordingly, the Court does not address Chebowski's challenge to the Plan Administrator's vesting determination as arbitrary and capricious contained in Count IV.

Chebowski's claim of equitable estoppel rests upon federal common law derived from ERISA. *See Trombly v. Fid. Workplace Servs. LLC*, No. 11-13477, 2013 WL 866456, at *21-22 (E.D. Mich. Mar. 7, 2013) (citing *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 440 (6th Cir. 2010) (recognizing the existence of a federal common law claim of equitable estoppel in the context of ERISA pension benefits)). The elements of a traditional equitable estoppel claim are as follows: (1) conduct or language amounting to a representation of material fact; (2) awareness of the true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation. *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991).

In the context of ERISA, principles of estoppel are rarely applied to vary the terms of unambiguous plan documents because a "party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party." *Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998). However, a plaintiff can invoke equitable estoppel in the case of unambiguous pension plan provisions where the plaintiff can demonstrate the aforementioned traditional elements of estoppel, "including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud, plus (1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel." *Bloemker*, 605 F.3d at 444. The Sixth Circuit imposed these additional requirements in the context of ERISA pension plans in order to address the concern that estoppel claims could undermine the financial integrity of ERISA pension plans and prejudice the rights and legitimate expectations of third parties to retirement income. *Id.* at 440.

Defendants argue that Chebowski's estoppel-based claims fail to state a claim because Chebowski is not entitled to a vested pension benefit under the unambiguous terms of the Plan, and no complex calculations are needed to make

this straightforward eligibility determination under the 5-year rule. Defendants also argue that Chebowski cannot establish justifiable reliance in the absence of complexity because he was aware that the benefit statements contained inaccurate information that was inconsistent with the clear and unambiguous terms of the Plan. Defendants further argue that the December 1994 Amendment does not support Chebowski's claim because Chebowski ceased accruing years of eligibility service when he stopped working for Kelsey-Hayes. His years of eligibility service were not affected by the accrued benefit freeze under the Plan Amendment that only became effective after Chebowski terminated employment. Additionally, Defendants argue that Chebowski's complaint does not allege that TRW intended deception or such gross negligence as to amount to constructive fraud.

Chebowski, on the other hand, argues that he has properly alleged the five traditional elements of an equitable estoppel claim. Chebowski argues that he can establish justifiable reliance because he was informed that his benefits were vested outside of the normal 5-year vesting rule as a result of mergers and the 1994 Plan Amendment, and the status of his benefits being 100 percent vested was repeatedly confirmed on his benefit statements. Chebowski argues that confirming that his benefits had become vested through this "alternative path" would have involved complex analysis of the mergers, amendment documents, and their interactions with the Plan. Chebowski argues that "[a]lthough Chebowski heard of the reason

10

for his 100% vesting through low level conversations, he confirmed his understanding through official written documents," the benefit statements he reasonably relied on because he had no reason to question whether his benefits had become 100 percent vested.  (Doc # 21, Pg ID 474)  Chebowski further argues that he properly alleged that TRW intended deception or such gross negligence as to amount to constructive fraud by claiming that Defendants were aware of the true facts and that they intended for Chebowski to rely upon their representations.

In the case at bar, the Court concludes that Chebowski's estoppel claims fail as a matter of law.  While Chebowski has properly alleged the first two elements of a traditional equitable estoppel claim — (1) that there was a material misrepresentation when Chebowski received benefit statements and communications form the Plan Administrator stating that his monthly retirement benefit was $183.86 and that his benefit was 100 percent vested; and (2) that the Plan Administrator was aware of the true facts and had all of the information needed to determine Chebowski's vesting and retirement benefit — Chebowski has not sufficiently alleged the remaining elements.

Regarding the third element, Chebowski has not alleged, beyond a formulaic recitation of this element, intention on the part of TRW that the representation that his benefit was 100 percent vested be acted on.  The Court finds, as Defendants assert, that Chebowski has not alleged that Defendants engaged in intended

deception or such gross negligence as to amount to constructive fraud. The benefit statements that Chebowski received through the third-party Fidelity Investments' website stated that his "estimated" monthly retirement benefit was $183.86, based on records indicating that he "separated from employment on December 31, 1990," a date of termination that Chebowski knew to be incorrect. The benefit statements also detailed that Chebowski's current vested percentage was 100 percent, based 1.25 years of service with Kelsey-Hayes, a number of years of service that Chebowski also knew to be incorrect. The Court notes that it was Chebowski himself who initiated the correction of the erroneous information on the benefit statements. The third-party website made clear that the benefit and vesting information was estimated based on the information on file regarding the Participant's start and termination dates and length of service, information that the third-party website provided along with the estimate for the Participant's review.

Even taking all of Chebowski's well-pleaded material allegations as true, here, as in *Trombly*, the most that can be shown under this record is an "honest mistake" regarding Chebowski's vesting status, and "this sort of mere misfeasance without an intent to deceive falls short of the malfeasance that estoppel requires." 2013 WL 866456, at *17 (internal citation and quotation marks omitted). It is not clear what action the Defendants would have intended Chebowski to take. Unlike the plaintiff in *Bloemker* who chose to take an early retirement based on the plan

administrator's official certification that he would receive a monthly benefit of a certain amount, Chebowski alleges that it was only *after* his termination of employment that he received statements indicating that he was 100 percent vested.

Regarding the fourth element, Chebowski alleges that he was unaware of the true facts because he had no reason to believe that he was not 100 percent vested after being informed "through low level conversations" that his benefits were vested outside of the normal 5-year vesting rule stated in the Plan as a result of mergers and the December 1994 Plan Amendment.  As noted above, the Sixth Circuit has imposed an additional requirement in the context of ERISA pension plans.  Plaintiffs claiming estoppel must also have relied on written promises.  This is precisely to avoid erosion of the plan's integrity and actuarial soundness through oral modifications of ERISA plans in conversations with low-level employees. *Bloemker*, 605 F.3d at 440-41 (citing *Orth v. Wis. State Employees Union, Council 24*, 546 F.3d 868, 872 (7th Cir. 2008)).  These low level conversations regarding vesting through an "alternative path" (not described in any Plan document) alleged by Chebowski are not sufficient to establish that he was unaware of the true fact that his pension benefit was not vested under the Plan because he had not attained the required minimum of five years of service.  Chebowski alleges his 100 percent vested status was confirmed in writing in subsequent benefit statements, and that

13

he had no reason to doubt these benefit statements. However, it is undisputed that Chebowski was aware of the 5-year vesting rule as stated in the Plan, that Chebowski was aware that he worked for Kelsey-Hayes for only 4.7 years, that Chebowski was aware that his date of termination and number of years of service with Kelsey-Hayes were incorrect on his benefit statements and eventually sought to have them corrected, and that Chebowski was aware that his benefit statements showed a benefit and vesting estimate based on the incorrect information, as explicitly stated on the benefit statements. The Court concludes that Chebowski has not sufficiently alleged that he was unaware of the true facts.

Regarding the fifth element, Chebowski has not properly alleged detrimental or justifiable reliance. Chebowski alleges that he received oral statements indicating an "alternative path" to vesting and written statements indicating that his pension benefit was 100 percent vested only after his termination of employment. Likewise, Chebowski alleges that the Plan Amendment took place in December 1994, after his termination of employment. His termination of employment took place on May 13, 1994, at which time Chebowski was aware that he had not attained the minimum of five years of service required under the Plan for a vested pension benefit. Chebowski has not alleged any detrimental reliance on representations that post-dated his May 13, 1994 termination of employment. Even assuming some detrimental reliance, the Court cannot conclude that any

14

reliance would be justifiable. For years, Chebowski received written benefit statements with a benefit and vesting estimate which the statements disclosed on their face rested on assumptions that Chebowski knew to be erroneous and eventually sought to have corrected, namely a termination date and a number of years of service that were incorrect.

As noted above, the Sixth Circuit has found that a "party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party." *Sprague*, 133 F.3d at 404. Here, Chebowski's hiring date at Kelsey-Hayes, his date of termination of employment, and his years of service were all indisputably known to Chebowski. Any reliance on Chebowski's part would not be reasonable or justifiable because it is inconsistent with the clear and unambiguous operative Plan language stating that a participant must have completed 5 years of service to be eligible for a vested pension benefit.

Even if Chebowski had sufficiently alleged all of the elements of a traditional claim of equitable estoppel, Chebowski would nevertheless fail to state a claim of equitable estoppel under the Sixth Circuit's higher standard for equitable estoppel claims in ERISA pension benefit claims. In addition to properly alleging the five traditional elements, Chebowski would also have to properly allege (1) a written representation; (2) plan provisions which, although unambiguous, did not

allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel. *Bloemker*, 605 F.3d at 444. As discussed above, representations regarding the "alternative path" to vesting made in "low level conversations" would not meet this higher standard. However, Chebowski did receive written benefit statements through the third-party Fidelity Investments' website stating that his pension benefit was 100 percent vested. Nevertheless, as also noted above, the plan eligibility provision at issue here is unambiguous and does allow for individual calculation of benefit. Chebowski need only know that he did not work the requisite five years to know that he was not eligible for a vested pension benefit. Chebowski argues that confirming that his benefits had become vested through the "alternative path" would have involved complex analysis of the mergers, amendment documents, and their interactions with the Plan. However, Chebowski concedes that representations regarding the "alternative path" to vesting were made in "low level conversations" and not in writing. Under these facts, the Court cannot find extraordinary circumstances in which the balance of equities strongly favors the application of estoppel. The Court concludes that Chebowski's estoppel claims fail as a matter of law.[1]

---

[1] After Defendants' Motion was fully briefed, Defendants filed a Notice of Supplemental Authority on April 22, 2016 (Doc. # 24) regarding *Donati v. Ford Motor Co., Gen. Ret. Plan, Ret. Comm.*, 821 F.3d 667 (6th Cir. 2016) (to which no response was filed), and Plaintiff filed a Notice of Supplemental Authority on September 16, 2016 (Doc. # 25) regarding *Deschamps v. Bridgestone Americas, Inc. Salaried Employees Ret. Plan, et al.*, -- F. App'x --, 2016 WL 4738029 (6th Cir. 2016) (to which Defendants filed a response). *Donati* affirmed the dismissal of a plaintiff's equitable estoppel claims because the unambiguous terms of that plan precluded the plaintiff's claim as equitable

## C. Chebowski's Claims of Failure to Maintain Pension Plan Records (Count II)

Defendants also seek dismissal of Chebowski's claims that TRW failed to maintain pension Plan records as required by ERISA, section 209 in Count II of the Complaint. ERISA requires employers to "maintain records with respect to each of [its] employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1).

Defendants argue that TRW maintains records sufficient to determine that Chebowski is not eligible for pension benefits under the Plan, including Chebowski's start date and termination date, in full compliance with ERISA.

Chebowski argues that Defendants could not properly determine the benefits due to Chebowski without records of how Kelsey-Hayes, the Plan Administrator at the time of Chebowski's termination, calculated that his pension benefit was one hundred percent vested. Chebowski notes that TRW has admitted that Chebowski's accrued benefit was provided to them without calculation details at the time TRW became the record keeper. Chebowski contends that TRW has

---

estoppel cannot be used to vary the terms of unambiguous plan documents. *Donati*, 821 F.3d at 674-75. *Deschamps* affirmed a plan participant's rights to bring a claim for equitable estoppel to remedy misrepresentations made to a participant, but the court found that: (1) the plan provisions in that case were ambiguous, and (2) the plaintiff in that case detrimentally relied on misrepresentations by three members of upper management regarding his benefits before transferring jobs and turning down other employment opportunities. *Deschamps*, 2016 WL 728029, at **4-6. The Court finds that the facts and legal conclusions reached by both the *Donati* and *Deschamps* courts are consistent with, and support, the conclusions reached by this Court.

failed to comply with ERISA in failing to maintain records of this previous calculation.

The Court concludes that Chebowski's claims of failure to maintain pension plan records fail as a matter of law. The Plan unambiguously required five years of service in order to be entitled to a vested pension benefit. There is no other Plan language in the record that hints at any other path to vesting or any additional calculation formula needed to determine whether Chebowski was entitled to a vested pension benefit under the Plan. ERISA simply requires that employers maintain records sufficient to determine the benefits due. All parties agree that Defendants maintained records of Chebowski's start date and termination date, and all parties agree that Chebowski worked for Kelsey-Hayes for less than five years. Under these circumstances, TRW was not required to maintain any additional records of this simple calculation. The Court finds that Defendants did maintain records sufficient to determine Chebowski's eligibility for a pension benefit, in full compliance with ERISA, section 209. Chebowski's claims of failure to maintain pension plan records fail as a matter of law.

### III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendants' Motion for Partial Judgment on the Pleadings (Doc # 18) is GRANTED as to Count II and the equitable-estoppel portion of Count IV only.

IT IS FURTHER ORDERED that Count II and the equitable-estoppel claim only contained in Count IV are dismissed with prejudice.

IT IS FURTHER ORDERED that a status/scheduling conference is set for Wednesday, October 5, 2016 at 2:30 p.m.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: September 29, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager